```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
ABRAHAM CAMPOS, et al,                :
                     Plaintiffs,      :
                                      :       23cv1184 (DLC)
              -v-                     :
                                      :       OPINION AND
                                      :          ORDER
V&B INVESTMENT GUTTENBERG LLC and     :
VALENTINA REALTY LLC,                 :
                     Defendants.      :
                                      :
                                      :
------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Adam Pollock
Pollock Cohen LLP
111 Broadway, Suite 1804
New York, NY 10006

For defendants:
Adam Sherman
Jacobs P.C.
595 Madison Avenue
39th Floor
New York, NY 10022

DENISE COTE, District Judge:

The plaintiffs, who are judgment creditors, have brought claims against V&B Investment Guttenburg LLC ("V&B") and Valentina Realty LLC ("Valentina") to unwind fraudulent transfers. The plaintiffs now move for summary judgment. For the following reasons, their motion is granted.

## Background

This action stems from a judgment entered in a consolidated class action. The class action was brought to recover unpaid wages and for other violations of state and federal labor laws against non-party Besim Kukaj ("Kukaj") and various entities that he owns and controls, many named with some variation of his initials (the "Class Action Defendants"). The Class Action Defendants operated restaurants throughout New York City.

The class actions were consolidated in March of 2019. The Class Action Defendants initially participated in the litigation, but they ceased to participate later in 2019. On May 20, 2020, a Clerk's Certificate of Default was entered as to each of the Class Action Defendants. On December 3, 2021, the Honorable John G. Koeltl entered a default judgment for the plaintiffs against Kukaj and all other Class Action Defendants, jointly and severally, in the amount of $2,256,821.50, plus an award of fees and costs in the amount of $179,024.02. The plaintiffs allege that only $29,704.50 has been collected on the judgment.

The plaintiffs have shown that during the course of the underlying class action litigation, Kukaj and entities he controlled transferred funds in an effort to frustrate the plaintiffs' anticipated judgment collection efforts. The

entities receiving the transferred funds include the defendants V&B and Valentina.

A.   Defendants V&B and Valentina

Both defendants are affiliated with Kukaj.  Defendant V&B is a New Jersey LLC formed in 2019.  The certificate of formation lists Soranee Penthamrongrat as the authorized representative.  Soranee Penthamrongrat is Kukaj's wife and is also known as Soranee Kukaj.  Soranee Kukaj also verified V&B's interrogatory responses, describing herself as "the shareholder of V&B Guttenberg LLC."  On May 26, 2020, V&B opened an account at PNC Bank; the account opening documents list Kukaj as a "member."

The Certificate of Formation for Valentina lists Kukaj's brother, Luan Kukaj, as its authorized representative.  Soranee Kukaj verified Valentina's interrogatory responses and described herself as "the shareholder of Valentina Realty LLC."  Valentina also opened an account at PNC Bank on May 20, 2020, and Kukaj was listed as a "member" on the account opening documents.

B.   Transfers of Funds to V&B and Valentina

On multiple occasions between June 12, 2020 and September 7, 2020, the Class Action Defendants transferred assets to the defendants.  There was no consideration for any of these transfers.  Most of the transfers were of money received by the

3

Class Action Defendants under pandemic-related government programs. Each of the transfers is summarized briefly below.

Class Action Defendant BKUK 5 Corporation ("BKUK 5") was formed by Kukaj in 2015. On June 6, 2020, BKUK 5 opened a new account at PNC Bank, with Kukaj signing as President. On June 10, 2020, BKUK 5 received $126,997 in Paycheck Protection Program ("PPP") loan money. Two days later, on June 12, 2020, BKUK 5 transferred $110,000 to an account held by V&B at Bank of America.

Class Action Defendant BKUK 9 Corp. ("BKUK 9") was formed by Kukaj in 2016. On May 21, 2020, it opened a new account at PNC Bank with Kukaj signing as President. On June 4, 2020, BKUK received $45,095 in PPP money in the new PNC Bank account. On June 12, 2020, BKUK 9 transferred $30,000 to an account held by V&B at Bank of America.

Class Action Defendant BKUK Corporation ("BKUK") was formed in 2013 by Kukaj. On June 6, 2020, it opened a new account at PNC Bank, with Kukaj signing as President. On June 22, 2020, $10,000 in COVID-19 Economic Injury Disaster Loan ("EIDL") money was deposited into the account. On July 9, 2020, BKUK transferred $9,000 to an account held by Valentina at Valley National Bank.

Class Action Defendant BKUK 6 Corp. ("BKUK 6") was formed by Kukaj in 2015. On May 21, 2020, it opened a new account at PNC Bank, with Kukaj signing as President. On July 22, 2020, $126,900 in PPP funds was deposited into the new PNC account. On August 10, 2020, over the course of three transactions on the same day, BKUK 6 transferred $99,000 to an account held by V&B at PNC bank.

On June 3, 2020, 319 W. 51st St. Restaurant ("319") opened a new account at PNC Bank, with Kukaj signing as President. On June 17, 2020, $126,997 in PPP funds was deposited into the new PNC account. The next day, June 18, 2020, 319 transferred $85,000 to an account held by V&B at Bank of America. Later, on August 10, 2020, 319 transferred $18,000 to an account held by V&B at PNC Bank.

On August 3, 2020, 319 received a $16,000 deposit from an entity called VV&V Brothers 202 Corp. The same day, Class Action Defendant BKUK 6 deposited $10,000 into the PNC account of 319. On August 11, 319 received a $150,000 deposit from an entity called VV&V Brothers 95 7th Ave. South Corp. The same day, 319 wired out $150,000 to an account held by Valentina at Valley National Bank in two transactions.

On September 1, 2020, BKUK 11 Corp. transferred $148,000 from its account at PNC into the PNC account of 319. The same

day, 319 transferred $148,000 to an account belonging to Valentina.

C.   The Criminal Action

On or about December 7, 2020, Kukaj was charged with racketeering offenses, including criminally obtaining fraudulent PPP loans. United States v. Iseni et al, No. 20-cr-660, ECF No. 2 (S.D.N.Y. Dec. 7, 2020). On November 1, 2022, Kukaj pleaded guilty to conspiracy to commit bank fraud and to making interstate threats. Id., ECF No. 304, 306 (S.D.N.Y. Nov. 1, 2022). He was sentenced to 57 months' imprisonment on April 11, 2023. Id., ECF No. 413 (S.D.N.Y. Apr. 17, 2023).

On April 17, 2023, a Consent Preliminary Order of Forfeiture was issued against Kukaj. Id., ECF No. 411 (S.D.N.Y. Apr. 17, 2023). The Order stated that on or about October 17, 2020, the Government seized "$405,535.00 in United States currency formerly on deposit" in the Valley Bank account held in the name of Valentina Realty Service Corp.

II.  Procedural History

On February 13, 2023, the plaintiffs filed this action. The complaint pleads six counts of fraudulent conveyance under the New York Voidable Transactions Act, N.Y. Debt. and Cred. Law § 270-81 (2019). On July 7, the plaintiffs moved for a default judgment against the defendants. On August 18, 2023, the defendants filed their answers. An Order of September 7 set a

schedule for initial interrogatories and document requests. The plaintiffs filed this motion for summary judgment on November 17. The motion became fully submitted on December 22.

## Discussion

The standard governing motions for summary judgment is well established. "A motion for summary judgment may be properly granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Rupp v. Buffalo, 91 F.4th 623, 634 (2d Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d. Cir 2021) (citation omitted). In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

Local Rule 56.1, which was "adopted to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts," requires that

> any motion for summary judgment be accompanied by a list of the material facts as to which the moving party contends there is no genuine issue to be tried . . . . Should the nonmoving party wish to contest the assertions contained within a Rule 56.1 statement, the nonmoving party must respond to each of the statement's paragraphs and include, if necessary, a statement of the additional material facts that demonstrate a genuine issue for trial.  A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.

T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417-18 (2d Cir. 2009) (citation omitted).

Local Rule 56.1(c) provides that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Rule 56.1(d) further requires that each statement by the movant or opponent in the Rule 56.1 statements "including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible" under Fed. R. Civ. P. 56(c).

The plaintiffs have submitted a Rule 56.1 Statement with citations to evidence to support each element of their claims of fraudulent conveyance. In a few instances, the defendants have responded with a denial, principally on the ground that they lack personal knowledge. In none of these instances, however, do the defendants cite to admissible evidence that raises a question of fact. The plaintiffs have therefore shown that they are entitled to summary judgment.

Moreover, in their memorandum of law, the defendants do not contest the plaintiffs' motion as to claims against V&B. Nor do they dispute that the transfers to Valentina were fraudulent. As explained below, the plaintiffs have shown that they are entitled to summary judgment.

I. Fraudulent Conveyances

The plaintiffs have brought four claims for fraudulent conveyance under N.Y. Debt. & Cred. Law § 273 against defendant V&B and two claims against Valentina. The plaintiffs claim that the transfers were fraudulent conveyances under both § 273(a)(1) and § 273(a)(2).

It is only necessary to address the claims under § 273(a)(1). Under § 273(a)(1), "a transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder,

9

delay, or defraud any creditor of the debtor."[1]  Section 273(b) describes factors to consider in assessing when wrongful intent exists.  It provides:

> In determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether:
>
> (1)   the transfer or obligation was to an insider;
>
> (2)   the debtor retained possession or control of the property transferred after the transfer;
>
> (3)   the transfer or obligation was disclosed or concealed;
>
> (4)   before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5)   the transfer was of substantially all of the debtor's assets;
>
> (6)   the debtor absconded;
>
> (7)   the debtor removed or concealed assets;
>
> (8)   the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[1] Effective April 4, 2020, New York State adopted the Uniform Voidable Transactions Act, N.Y. Debt. & Cred. Law. §§ 270-281, replacing New York Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. Law §§ 270-281-a (2014).  The new statute largely mirrors the federal law governing fraudulent transfers contained in the Bankruptcy Code, 11 U.S.C. §548(a)(1)(a).  N.Y. Debt. & Cred. Law § 273(b) enumerates factors that may be considered in determining "actual intent" to hinder, delay, or defraud, while 11 U.S.C. § 548 does not.  The Second Circuit has not addressed the amended N.Y. Debt. & Cred. Law § 273 but has addressed 11 U.S.C. § 548 and has relied on similar factors to evaluate actual intent to hinder, delay, or defraud a creditor.

>   (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; . . . .

N.Y. Debt. & Cred. Law § 273(b).  See In re TransCare Corporation, 81 F.4th 37, 53 (2d Cir. 2023) (discussing 11 U.S.C. § 548 and badges of fraud).

The plaintiffs have established numerous badges of fraud listed in § 273(b).  The transfers were between insiders and/or their affiliates.  See N.Y. Debt. & Cred. Law § 270.  Kukaj had direct or indirect control of the transferors and transferees. For their part, the defendants do not dispute that V&B and Valentina are "insiders" or that Kukaj retained possession or control of the transferred funds.  The defendants concede that the contested transfers were made for no consideration.  It is also undisputed that the transfers occurred at a time when the Class Action Defendants were facing a high probability that a significant judgment would soon be entered against them.  In sum, the plaintiffs have shown that the transferors made the transfers to V&B and Valentina "with actual intent to hinder, delay or defraud" the plaintiffs in their efforts to collect on the then-likely judgment to be entered against the Class Action Defendants.

The defendants "do not contest" the motion as to V&B. They make a single argument as to Valentina. The argument fails.

The defendants argue that the plaintiffs do not have "standing" to void conveyances to Valentina because the Government has a superior interest in the funds. They represent that the transferred funds were criminally acquired PPP funds. This argument confuses the law of standing to bring a claim with the law regarding priority of recovery. The issue at hand is whether the plaintiffs have shown that they are entitled to prevail on their claims of fraudulent transfer. Whether they can locate Valentina funds not already in the possession of the Government or to which the Government has no claim is a matter of post-judgment enforcement and does not prevent the plaintiffs from obtaining the judgment they seek here.[2]

I. Attorneys' Fees

The plaintiffs request an award of attorneys' fees. Under N.Y. Debt. & Cred. Law § 276-a, an award of reasonable attorneys' fees is appropriate when a plaintiff is awarded relief on claims of fraudulent conveyance. See Priestly v. Panmedix, Inc., 163 N.Y.S.3d 1, 2 (1st Dept. 2022). The defendants do not dispute that an award of attorneys' fees is appropriate; nor do they argue that the plaintiffs' fee request

---

[2] The plaintiffs represent that they do not intend to litigate with the Government over the priority of claims.

is unreasonable. The motion for an award of attorney's fees, expenses, and costs of $41,392.81 is granted.

II. Relief from Rule 62(a) Stay

Finally, the plaintiffs request relief from the 30-day stay of proceedings to enforce the judgment. See Fed. R. Civ. P. 62. Courts in this district have dissolved the automatic stay when there is a risk that the judgment debtor's assets will be dissipated. See, e.g. McGraw Hill LLC v. Doe 1, 616 F.Supp.3d 316, 331 (S.D.N.Y. 2022) (amended and superseded by McGraw Hill LLC v. Doe 1, 2022 WL 2979721 (S.D.N.Y. Jul. 26, 2022)); Spin Master Ltd. v. 158, 463 F.Supp.3d 348, 385 (S.D.N.Y. 2020).

The automatic stay under Fed. R. Civ. P. 62(a) is dissolved. The defendants have not opposed the application to lift the stay. As reflected above, they have not offered any objection to a finding that the underlying transfers at issue here were fraudulent, and have therefore identified no meritorious issue for appeal. Although Kukaj is incarcerated, the defendants are controlled by his family members and there is a risk that they will assist Kukaj in further fraudulent transfers of his assets.

## Conclusion

The plaintiffs' November 17, 2023 motion for summary judgment is granted. The plaintiffs' request for attorneys'

fees is granted in the amount of $41,392.81. The plaintiffs' request for dissolution of the automatic stay under Fed. R. Civ. P. 62(a) is granted. The plaintiffs shall submit a proposed final judgment.

Dated:   New York, New York
         March 19, 2024

                                       _____
                                            DENISE COTE
                                       United States District Judge